**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)**

| | |
|---|---|
| MICHAEL N. HANDBERG, <br><br> Plaintiff/Creditor, <br><br> v. <br><br> THE MORGAN CENTER, INC, <br><br> Defendant/Debtor. | Chapter 7 <br> Case No. 1:19-bk-13278 <br> Hon. Brian F. Kenney |

**MOTION FOR RELIEF FROM STAY**

J. Chapman Petersen, Esq., VSB #37225
David L. Amos, Esq., VSB #87271
Ibnul A. Khan, Esq., NY #5637178*
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2510 – Direct Dial
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
dla@petersenfirm.com
ik@petersenfirm.com
*Counsel for Plaintiff*

COMES NOW Michael N. Handberg, the Plaintiff and Judgment Creditor ("Handberg"), by counsel, who states the following in support of his Motion for Relief From Stay against the Defendant/Debtor The Morgan Center, Inc. ("TMC"):

## BACKGROUND

The bankruptcy petition filed by TMC was for no bona fide purpose other than to thwart an *additional* judgment that was to be entered against it—including its successor in interest, Northern Virginia Advocacy & Counseling Services, Inc. ("NVACS")—in favor of Handberg by Fairfax Circuit Court on or before October 11, 2019, after a two (2) day trial was held on September 23–24, 2019, for fraudulent conveyance, voluntary conveyance, and successor liability against TMC and NVACS.

## STATEMENT OF FACTS

**1. The Prior Litigation**

This matter arises from an earlier case initiated by Felicia Goldberg ("Ms. Goldberg"), the principal of TMC, in Fairfax Circuit Court in 2016 (Case No. CL-2016-4613) (the "Prior Litigation"). TMC, headed by Ms. Goldberg, was a company providing advocacy and therapy services to minors—including Handberg's child. Following unauthorized charges and overbilling, Handberg sent a letter to two Loudoun County school officials informing them he was no longer employing TMC and the underlying reasons. Subsequentially, the parties engaged in litigation: TMC alleged defamation[1] and Handberg alleged *inter alia* conversion.

---

[1] A judgment regarding the defamation action was recently overturned. *Handberg v. Goldberg*, Record No. 170964, 2019 Va. LEXIS 95 (Aug. 22, 2019).

1

On or about March 3, 2017, Fairfax County Circuit Court entered a final order granting judgment in favor of Handerg against TMC in the amount of $45,035.00 (the "Judgment"). The Judgement is attached as Exhibit 1. It is the only judgment in the Prior Litigation.

**2. The underlying judgment and cessation of TMC as a business thereafter**

Thereafter, TMC "closed" its existing business and subsequently re-opened–in the same place with the same contractors–as NVACS, which provides the exact same consulting services to the exact same clients. In short, the "closing" and "re-opening" was orchestrated with the sole purpose of avoiding the Judgment. Accordingly, Handberg filed suit in Fairfax Circuit Court alleging fraudulent conveyance, voluntary conveyance, and successor liability against TMC and NVACS (the "Subsequent Litigation").

**3. The Bill of Sale between TMC and NVACS for TMC's tangible property**

On or about April 26, 2017–the same day NVACS was formed[2]–TMC sold all of its tangible business property to NVACS through a Bill of Sale, purportedly for $100.00 in cash. The signatories to this transaction on behalf of TMC and NVACS were Mr. and Mrs. Goldberg, respectively. The Bill of Sale is attached hereto as Exhibit 2. There is no record of the payment, as it was for "cash." Exh. 2. This transfer included the following items: reception area chairs, two (2) file cabinets, a canon printer, two (2) offices desks and chair, two (2) phones, an additional ten (10) chairs, two (2) sofas, "artprints" (sic), a Keurig Coffee machine, ten (10) lamps, and three (3) shelf units. *Id*. *See also* Deposition of Ms. Goldberg, attached hereto as Exhibit 3, at 30:5-31:12.

---

[2] *See* https://sccefile.scc.virginia.gov/Business/0817743; Exh. 3 at 45:4-6. Indeed, TMC/Ms. Goldberg paid $600.00 in legal fee to incorporate NVACS using an "American Express Blue Cash Business Credit Card in the name of 'MORGAN CENTER INC FELICIA M GOLDBERG'…" *See* attached hereto as Exhibit 10 at 2. The Court can take judicial notice of the Order (Exh. 10).

Notably, these conveyances were orchestrated within days of the judgment in the Prior Litigation becoming final. *Cf.* Exh. 1 at 2 *with* Exh. 2. When Plaintiff initiated garnishment proceedings in Fairfax Circuit Court on the Judgment (Case Number CL-2017-8892), Ms. Goldberg had already liquidated TMC's bank account with United Bank. Exh. 3 at 86:13-87:18. To avoid the judgment and continue paying TMC's/NVACS' payroll, Ms. Goldberg opened a separate bank account with Middleburg Bank. *Id*. at 88:15-17. Ms. Goldberg then transferred cash from TMC's account to that of NVACS in order to cover payroll. *Id*. at 88:19-90:10. Indeed, TMC had already closed its bank account post-judgment. *See* Answer dated July 7, 2017 by United Bank in CL-2017-8892, which is attached hereto as Exhibit 4.

4. **The letter sent by NVACS' to TMC's clients regarding "new company"**

Sometime after April 26, 2017, and within the first two weeks of May 2017, the joint principal of (the still existing) TMC and (new) NVACS —i.e., Ms. Goldberg—sent a letter, on NVACS' letterhead, to all of TMC's clients (and pediatricians and clinicians) (the "Letter"). *See* Exh. 3 at 59:5-60:1; *see also* the Letter, which is attached hereto as Exhibit 5. The Letter stated that a new company was formed "with a name that more accurately reflects the services we provide and to help potential clients more readily identify us for their family's needs." Exh. 5. Indeed, on or about September 12, 2018, Mr. Goldberg stated (via e-mail to his CPA) that he received legal advice to keep TMC in good standing for a few years to avoid liability although it ceased doing business. *See* Exh. 3 at 24:7-25:21; *see also* the e-mail, which is attached hereto as Exhibit 6, at 1.

5. **NVACS was a mere continuation of TMC**

NVACS was a mere continuation TMC in the following ways:

3

- The same services: TMC provided two (2) services prior to closing, i.e., therapy and advocacy for school-age clients. Exh. 3 at 18:12-19:2.[3] NVACS also provided the same. *Id*. at 63:12-64:4;

- The same location and landlord: NVACS also took over TMC's lease, through a sublease, for a six (6) month period through to November 2017–i.e., NVACS operated at the same exact location as TMC and paid the exact same lease amount. Exh. 3 at 12:5-7; 36:5-21; 45:11-46:2;[4]

- The same clients: Prior to NVACS beginning operations in May 2017, TMC was still providing services to its existing clients. *Id*. at 47:3-6; 48:7-9. After NVACS began its operations, it continued to serve the same clients. *Id*. at 46:8-11; Exh. 5;

- The same e-mail: NVACS continued to use TMC's email to contact and correspond with their clients, which e-mail is sent through a link on TMC's still existing website. Exh. 3 at 29:4-14.

- The same independent operators: NVACS also continued the relationship with TMC's independent operators, who are licensed therapists that received referrals through TMC (then NVACS). *Id*. at 11:7-13; 49:21-50:4;

- The same shareholders: NVACS and TMC both had one (1) shareholder–Ms. Goldberg. *Id*. at 11:9-10; 50:22-51:1; and

---

[3]    *See* https://www.morgancenterinc.com/ServicesProvided.en.html (services provided by TMC are: Therapy & Counseling; Advocacy; Autism Program; and Educational Consulting). However, this is later contradicted by Ms. Goldberg. *See* Exh. 3 at 64:13.

[4]    After NVACS would deposit the rent money to TMC, TMC would thereafter send a cashier's check to the landlord. Exh. 3 at 37:2-11.

4

- The same officer(s): Although the Goldbergs were both officers in TMC, Ms. Goldberg remained an officer in NVACS–the key principal for the Goldberg Defendants. *Id.* at 11:7-8; 50:20-21.

Handberg in the subsequent litigation asserted a count for both fraudulent conveyance and successor liability against NVACS as being a "mere continuation of TMC." *See* the Amended Complaint filed in the Subsequent Litigation, which is attached hereto as Exhibit 7, at ¶¶ 39-42.

6. **The admissions by TMC during Debtor's Interrogatories**

In the Prior Litigation, after the judgment became final, Handberg, through counsel, conducted Debtor's Interrogatories against TMC on September 22, 2017 (Exh. 8) and October 18, 2017 (Exh. 9) respectively. The transcripts for the Debtor's Interrogatories are attached hereto respectively as Exhibits 8 and 9. TMC was represented by Mrs. and Mr. Goldberg. During the Debtor's Interrogatories, the following admissions were made by TMC:

- TMC ceased doing business as a result of Handberg's judgment: TMC stopped conducting business at the end of May 2017. Exh. 8 at 19:7-9. Mr. Goldberg testified that TMC decided to go out of business "[b]ecause of" Mr. Handberg and the "degradation of the business because of the lawsuit." *Id*. at 55:6-22;

- NVACS a tenant of TMC: NVACS became a tenant of TMC on May 1, 2017, which lasted until November 2017. *Id*. at 19:13-22:6; 25:6-17;

- NVACS paid for TMC's lease as subtenant: NVACS paid TMC for the lease payments and TMC paid the landlord through a check for $1788. *Id*. at 34:7-36:4;

- Same location and employees: the three people who were employed by TMC all transferred to NVACS at that location. *Id*. at 26:15-21;

5

- Sale of TMC's tangible assets: TMC's furniture were sold to NVACS through a bill of sale for $100, which amount was paid for in cash. *Id*. 27:10-29:13;

- TMC commingled its funds with the Goldbergs' personal funds: Mr. and Ms. Goldberg testified to commingling their personal funds with TMC's funds and used personal funds to pay TMC's debts. *Id*. at 60:9-13; 62:22-63:8. This was purportedly because NVACS did not have a credit card. *Id.* at 74:17-19; 74:20-75:4; 74:20-75:13; 77:3-13; 83:7-16; 96:12-97:12; 98:3-7; 110:1-10; Exh. 9 at 43:16-21; *Id*. at 46:19-47:3; 49:15-17.

- NVACS continued to provide services to all of TMC's clients: Mrs. Goldberg testified TMC had 10 clients active in May of 2017 who then began receiving services the same services from NVACS thereafter. *Id*. at 67:17-68:15;

- NVACS used TMC's Amex card to incorporate itself: Mrs. Goldberg testified that Defendant RMZ was paid with one of TMC's Amex credit cards for an amount totaling $600.00 (*see* Exh. 10 at 2) for the legal services to incorporate NVACS. *Id*. at 73:11-21;

- TMC's incurrence of debt for NVACS by using TMC's credit cards: Mrs. Goldberg testified that TMC incurred debt for NVACS by using TMC's credit card(s). *Id*. at 74:12-17. Indeed, TMC's credit card was used to purchase a printer from Office Depot on 6/9/17 for $104.92, which printer was purchased for NVACS. *Id*. at 75:20-76:5; and

- TMC's failure to record/retain documents of corporate transactions: Mr. Goldberg testified that Ms. Goldberg received a loan from TMC, as a shareholder, which loan was repaid by a "offset" through "legal fees paid" by the Goldbergs personally on

6

TMC's behalf. Exh. 9 at 16:17-21:10; Mr. Goldberg testified that TMC had no documents reflecting corporate resolutions or declarations with respect to loans made to TMC's shareholders. *Id.* at 23:1-23.

In essence, the principals of TMC have admitted that TMC ceased doing business as a result of Handberg's judgment.5 Thereafter, it sold TMC's tangible assets and transferred its entire business (without a record) to NVACS, which included its clients, employees, location, and lease. During that time, the Goldbergs continued to commingle their personal funds with that of TMC and incur debt through TMC for NVACS, including to incorporate NVACS.

Indeed, it is undisputed that TMC has ceased doing business since May 2017, by incorporating and rebranding itself as NVACS, and was "kept in good standing" to avoid further liability by Handberg against the Goldbergs and/or NVACS. Exh. 6. As shown on the Petition, only asset belonging to TMC is $1800 ($1500 representing a rental security deposit and $300 representing office fixtures), whereas TMC is indebted for an amount of $140,878.61. TMC's Petition at 6–8. A majority of its liabilities are for legal fees in defending the Subsequent Litigation (Campbell Flannery for $80,755.61) and the Judgment (representing $45,030.00). TMC's Petition at 13.

7. <u>Lawsuit Filed for Fraudulent Conveyance against TMC and NVACS</u>

On October 3, 2018, Handberg filed an action in Fairfax County Circuit Court against TMC and NVACS for fraudulent conveyance, seeking to void the "transfer" and enter judgment for damages, including attorney fees, for the debtor's fraudulent actions pursuant to Virginia Code § 55-80 *et seq*. The matter was tried on September 23–24 in Fairfax County Circuit Court. After

---

5   While TMC has not formally dissolved, it has filed no tax return since 2017 and has indicated to its CPA that it will not resume business.

closing arguments (and denying several unsuccessful attempts by the defendants to dismiss/strike the case), the Court announced it would issue a ruling on or before Friday, October 11, 2019.

On the eve of the Court's ruling, TMC filed its Chapter 7 Petition for no bona fide purpose other than to thwart the Court's ruling and prevent another judgment against it. A few days later, TMC's successor-in-interest–NVACS–followed suit.

Sufficient "cause" exists for this Court to grant Handberg relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

## LAW

1. **Relief from Stay within the discretion of the Bankruptcy Judge**

A decision to lift the automatic stay under § 362 of the Code is within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion. *See In re Boomgarden,* 780 F.2d 657, 660 (7th Cir. 1985). When a bankruptcy petition is filed, most judicial actions against the debtor commenced before the filing of the petition are automatically stayed. *See* 11 U.S.C. § 362(a)(1). According to § 362(d), the bankruptcy court may lift the stay "for cause." Because the Code provides no definition of what constitutes "cause," courts must determine when discretionary relief is appropriate on a case-by-case basis. *See In re Mac Donald,* 755 F.2d 715, 717 (9th Cir. 1985); 2 *Collier on* Bankruptcy § 362.07[1], at 362-68 to 69. (15th ed. 1992); *see also In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

2. **Balancing test factors**

The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is

denied. *See In re Peterson,* 116 Bankr. 247, 249 (D. Colo. 1990) (discussing balancing test). The factors that courts consider in deciding whether to lift the automatic stay include:

1. whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary;
2. whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and
3. whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*In re Robbins*, 964 F.2d at 345.

### 3. **Burden of Proof**

The burden of proof on a motion to modify the automatic stay is a shifting one. *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re* Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990). To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that "cause" exists for relief under § 362(d)(1). *Mazzeo v. Lenhart* (*In re* Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999); *Duvar Apt., Inc. v. Fed. Deposit Ins. Corp.* (*In re* Duvar Apt., Inc.), 205 B.R. 196, 200 (9th Cir. BAP 1996). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. 11 U.S.C. § 362(g)(2); *Sonnax*, 907 F.2d at 1285; *Duvar Apt.*, 205 B.R. at 200. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied. *Spencer v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002); *Mazzeo*, 167 F.3d at 142; *Kim*, 71 B.R. at 1015.

### ARGUMENT

1. **Sufficient "cause" exists**

The automatic stay imposed by 11 U.S.C. § 362(a) applies to the Subsequent Litigation pending a ruling in Fairfax Circuit Court as it was an action commenced against the Debtor TMC prior to the filing of the Petition. 11 U.S.C. § 362(a)(1). However, relief from the automatic stay may be granted "for cause." 11 U.S.C. § 362(d)(1).

Although the term "cause" is not defined in the Code, Courts have granted relief from stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the nonbankruptcy suit involves multiple parties or is ready for trial. *See, e.g.*, *Christensen v. Tucson Estates, Inc.* (*In re* Tucson Estates, Inc.), 912 F.2d 1162, 1166 (9th Cir. 1990) (stating that "[w]here a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial"); *Packerland Packing Co. v. Griffith Brokerage Co.* (*In re* Kemble), 776 F.2d 802, 807 (9th Cir. 1985) (affirming an order lifting the stay to permit a creditor to pursue a conversion and fraudulent conveyance action pending in the federal district court following a remand of the case by the appellate court for a retrial on the damages issue); *Stout v. Fields* (*In re Fields*), 2010 Bankr. LEXIS 4425, *19 (Bankr. M.D.N.C. June 24, 2008) (granting relief from automatic stay to proceed to litigate a fraudulent conveyance already commenced in state court, as it was a state law claim under North Carolina's statute).

"Cause" exists here. After a trial on the merits in Fairfax Circuit Court in the Subsequent Litigation against TMC and its successor-in-interest, NVACS, which was held on September 23–24, 2019, the Court (J. Bernhard presiding) stated that it would issue its ruling on or before October 11, 2019. TMC filed its Petition on October 3, 2019–on the eve of the Court's ruling. As indicated on its filings with this Court, TMC's business has been non-existent since May 2017–when NVACS was incorporated and began operating. TMC's purpose was not for a bona fide reason but

only to avoid the ruling in the subsequent litigation. Like the three (3) cases cited *supra*, this Court should grant relief from the automatic stay for cause and allow Fairfax Circuit Court to issue its ruling against TMC.

2. **Balancing test favors Handberg and Relief from Stay**

Here, the pending litigation involves state law claims pursuant to Virginia Code § 55-80 *et seq*. Although fraudulent conveyance is also a core proceeding under the Code, the expertise of the Bankruptcy Court is unnecessary as the matter has already been tried on the merits and is pending a ruling. Further, it involves a count for successor liability pursuant to Virginia's common law doctrine of successor liability. *See La Bella Dona Skin Care, Inc. v. Belle Femme Enters.*, LLC, 294 Va. 243, 258-59 (2016); *see also La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 2019 Va. Unpub. LEXIS 20, *2-*4 (2019). Plaintiff's successor liability also factually relates to its count for fraudulent conveyance pursuant to Virginia Code § 55-80. *See* Exh. 7 at 5-7.

Further, modifying the stay and permitting Handberg relief will promote judicial economy as the matter has been tried on the merits on September 23–24, 2019 before Fairfax Circuit Court. It is only pending a ruling. There would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in this Bankruptcy Court. This would further cause the parties to expend attorneys' fees for the same exact litigation it just finished.

Lastly, notwithstanding the lack of assets to execute upon, the estate can be protected properly by a requirement that Handberg enforce any such judgment against TMC only through the Bankruptcy Court while TMC's bankruptcy is pending.

WHEREFORE Plaintiff respectfully requests that this Court grant Plaintiff Michael N. Handberg relief from the automatic stay so that Fairfax Circuit Court can issue its ruling in the

11

Subsequent Litigation as it pertains to the Debtor The Morgan Center, Inc., and for such other and further relief as this Court deems necessary and just.

Dated: October 16, 2019                                      Respectfully submitted,
                                                             Michael N. Handberg
                                                             By Counsel

*/s/ J. Chapman Petersen*
J. Chapman Petersen, Esq., VSB #37225
David L. Amos, Esq., VSB #87271
Ibnul A. Khan, Esq., NY #5637178*
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2510 – Direct Dial
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
dla@petersenfirm.com
ik@petersenfirm.com
*Counsel for Plaintiff*

Document    Page 14 of 14

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 16th day of October 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification to the following:

Ann E. Schmitt, Esq.
Culbert & Schmitt, PLLC
40834 Graydon Manor Lane
Leesburg, VA 20175
(703) 737-6377
703-439-2859 (fax)
aschmitt@culbert-schmitt.com
*Counsel for The Morgan Center, Inc.*

John P. Fitzgerald, III
Office of the U.S. Trustee - Region 4
1725 Duke Street
Suite 650
Alexandria, VA 22314
703-557-7176
ustpregion04.ax.ecf@usdoj.gov
*U.S. Trustee*

Janet M. Meiburger
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101-5726
703-556-9404
trustee@meiburgerlaw.com
*Trustee*

Felicia Goldberg
100 W. Main St.
Berryville, VA 22611


      */s/ J. Chapman Petersen*
      J. Chapman Petersen