**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE MORGAN CENTER, | ) | Case No. 19-13278-BFK |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | |
| NORTHERN VIRGINIA | ) | Case No. 19-13319-BFK |
| ADVOCACY COUNSELING, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**ORDER: (A) GRANTING MOTIONS FOR SUBSTANTIVE**
**CONSOLIDATION OF BANKRUPTCY ESTATES; AND**
**(B) DENYING MOTIONS FOR RELIEF FROM THE**
**AUTOMATIC STAY**

This matter began as a billing dispute over $35.00. It has bourgeoned into two trials before the Circuit Court of Fairfax County, a trip to the Virginia Supreme Court (which reversed and remanded one of the judgments for a re-trial), a personal bankruptcy, a non-dischargeability adversary proceeding within that bankruptcy, and the two corporate Chapter 7 bankruptcies now before the Court. The Debtors request that the Court substantively consolidate the two corporate bankruptcy cases, which is opposed by a creditor, Michael Handberg. Mr. Handberg has requested that the Court lift the automatic stay so that he can pursue his pending action against the Debtors in State Court. For the reasons stated below, the Court will: (a) grant the Motions to consolidate the two cases; and (b) deny Mr. Handberg's Motions for Relief from the Automatic Stay.

**Findings of Fact**

The basic facts are not disputed.

*A. The Defamation Action.*

1. Dr. Felicia Goldberg was the sole owner and Executive Director of The Morgan Center, Inc. ("TMC"), located in Herndon, Virginia. TMC provided therapy, counseling and educational consulting services.

2. Michael Handberg's son was a client of Dr. Goldberg.

3. In June 2015 a dispute arose between Dr. Goldberg and Mr. Handberg concerning a bill for $35.00. Mr. Handberg sent an e-mail to Dr. Goldberg, and copied certain members of the Loudoun County Public School System, in which Mr. Handberg accused Dr. Goldberg of "fraudulent billing," among other allegations of unprofessional conduct.

4. Dr. Goldberg filed a defamation action against Mr. Handberg in the Circuit Court of Fairfax County (Case No. 2016-004613) (hereinafter, the "Defamation Action").

5. Mr. Handberg filed a counterclaim against TMC and Dr. Goldberg, alleging violations of the Virginia Consumer Protection Act ("VCPA"), as well as conversion and fraud.

6. The case was tried before a jury in March 2017. The jury returned a verdict in Dr. Goldberg's favor on the defamation claim and awarded her $90,000.00 against Mr. Handberg (this will be referred to as the "Defamation Judgment").

7. The jury awarded Mr. Handberg $35.00 in compensatory damages and $45,000.00 in punitive damages on his conversion claim against TMC. It found that TMC did not violate the VCPA, and further found that neither Dr. Goldberg nor TMC was liable for fraud. (The Court will refer to this as the "Conversion Judgment.")

8.  Mr. Handberg appealed the Defamation Judgment to the Virginia Supreme Court. TMC did not appeal the Conversion Judgment, and that judgment is final.

9.  In August 2019, the Virginia Supreme Court issued an Opinion in which it reversed the Defamation Judgment and remanded the case to the Circuit Court for a retrial. *Handberg v. Goldberg*, 831 S.E.2d 700 (Va. 2019). According to the Virginia Supreme Court, the trial judge committed reversable error by allowing the jury to consider certain statements that the Circuit Court previously ruled were non-defamatory statements of opinion, along with the allegedly defamatory statements of fact. *Id*. at 708.

10. The case has not yet been re-tried in the Circuit Court and remains pending. Dr. Goldberg has since amended her Complaint to seek $2,000,000.00 in damages.

   B. *The Formation of Northern Virginia Advocacy & Counseling Services, Inc. ("NVAC") and the Alter Ego/Fraudulent Transfer Action.*

11. In April 2017, about a month after the Conversion Judgment against TMC in the Defamation Action, Dr. Goldberg formed the Northern Virginia Advocacy & Counseling Services, Inc. ("NVAC"), as a Virginia corporation. Mr. Handberg alleges that Dr. Goldberg caused the transfer of substantially all of the assets of TMC to NVAC.

12. Mr. Handberg filed a Complaint against TMC and NVAC (and their counsel) in the Circuit Court of Fairfax County alleging that the transfer of TMC's assets to NVAC was a fraudulent transfer because: (a) the transfer was made shortly after the jury's verdict in the Defamation Action; (b) Dr. Goldberg was the owner of both TMC and NVAC; and (c) the transfer allegedly was for less than the assets were worth. *Handberg v. The Morgan Center, Inc.*, Case No. CL-2018-14335 (this will be referred to as the "Fraudulent Transfer/Alter Ego Action").

13. In his Complaint, as part of the "badges of fraud" alleged against TMC and NVAC, Mr. Handberg further alleged that "NVACS constitutes nothing more than an alter ego of TMC. As such, the corporate veil of NVACS should be pierced and its corporate structure disregarded." *Id.*, Amended Complaint, ¶¶ 25, 27.

14. In his Amended Complaint, Mr. Handberg included Count III, a Count for Successor Liability, alleging that "NVACS is a mere continuation of TMC and was created solely to avoid the lawful judgment of Plaintiff." *Id.*, Amended Complaint, ¶ 42.

15. The case was tried before the Circuit Court over two days in September 2019. It was stayed by the filing of the two corporate bankruptcy cases, described below.

*C. Dr. Goldberg's Personal Bankruptcy Case.*

16. On November 3, 2017, Dr. Goldberg and her husband filed a voluntary, joint Petition under Chapter 7 with this Court. *In re Goldberg*, Case No. 17-13751-KHK.

17. Dr. Goldberg listed the $90,000.00 Defamation Judgment as an asset in her Schedule B, and she exempted the Judgment in her Schedule C. *Id.*, Docket No. 1, pp. 14, 18.[1]

18. Mr. Handberg filed a Complaint in Dr. Goldberg's case seeking to have the Conversion Judgment held to be non-dischargeable under Section 523(a) of the Bankruptcy Code. *Handberg v. Goldberg (In re Goldberg)*, Case No. 17-13752-KHK, Adv. No. 18-01008-KHK.

19. This case went to trial before Judge Kindred of this Court on August 15, 2018. At the conclusion of the trial Judge Kindred ruled for Dr. Goldberg and dismissed the Complaint. *Id.*, Docket No. 26.

---

[1] No party objected to Dr. Goldberg's claim of exemption. Under Bankruptcy Rule 4003(b), an objection must be filed within 30 days of the conclusion of the meeting of creditors, or the exemption is allowed. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 647 (1992).

4

20.     Mr. Handberg did not appeal Judge Kindred's decision, and that judgment is final.[2]

21.     Dr. Goldberg received a discharge in her personal bankruptcy case. *In re Goldberg*, Case No. 17-13751-KHK, Docket No. 20. The Trustee filed a Report of No Distribution and the case was closed. *Id.*, Docket Nos. 22, 23.

D. *The Two Corporate Chapter 7 Bankruptcy Cases.*

   (i)     *The TMC Case.*

22.     On October 3, 2019, TMC filed a Voluntary Petition under Chapter 7 with this Court. Case No. 19-13278-BFK.

23.     Janet Meiberger was appointed as the Chapter 7 Trustee.

24.     The Petition was filed as a "no asset" case, in that the Debtor estimated that there would be no funds available to the unsecured creditors. *Id.*, Docket No. 1, Voluntary Petition, p. 3, ¶ 13.

25.     The Schedules list only $1,800.00 in assets, consisting of a $1,500.00 security deposit and $300.00 in computer equipment. *Id.*, pp. 7-8. In addition, the Schedules list a possible unliquidated malpractice claim against a law firm, possible claims against Mr. Handberg for "abuse of process," and a claim against NVAC for a month's rent ($1,788.34). *Id.*, p. 9.

26.     On the debt side, TMC listed a total of $140,878.61, which included the law firm of Campbell and Flannery ($80,755.61) and the Conversion Judgment in favor of Mr. Handberg ($35.00 compensatory damages and $45,000.00 in punitive damages). If the claim for punitive

---

[2] Mr. Handberg filed a Motion for a New Trial. Docket No. 30. Dr. Goldberg initially opposed the Motion (Docket No. 34), but when Mr. Handberg withdrew his Motion (Docket No. 38), Dr. Goldberg filed a Motion to Reschedule the Trial (Docket No. 42), which Judge Kindred denied. Docket No. 46.

5

damages is subordinated (*see* Part I(B), below), the Campbell Flannery claim constitutes approximately 85% of the unsubordinated, unsecured claims in the case.

27. The Trustee has not filed a Report of No Distribution, meaning that she has not abandoned the estate's fraudulent transfer/alter ego claims against NVAC at this stage of the case.

        *(ii)*    *The NVAC Case.*

28. On October 8, 2019, NVAC filed a Voluntary Petition under Chapter 7 with this Court. Case No. 19-13319-BFK.

29. This case also was filed as a "no asset" case, meaning that in the Debtor's estimation there would not be sufficient assets to pay a distribution to the unsecured creditors. *Id.*, Docket No. 1, Voluntary Petition, p. 3, ¶ 13.

30. Donald F. King was appointed as the Chapter 7 Trustee.

31. In its Schedules, NVAC listed a total of $2,800.00 in personal property, consisting primarily of its security deposit in the amount of $2,400.00. *Id.*, pp. 7-10.

32. On the debt side, Campbell Flannery was listed as the only unsecured creditor with a liquidated claim, in the amount of $80,755.61. *Id.*, p. 12.

33. Mr. Handberg is listed as having a disputed claim arising out of the alleged fraudulent transfer and alter ego claims. *Id.*

34. The Trustee has not filed a Report of No Distribution in this case.

*E. The Motions for Substantive Consolidation.*

35. On November 25, 2019, TMC filed a Motion to consolidate its case with that of NVAC. Case No. 19-13278-BFK, Docket No. 21.

36. NVAC filed a similar Motion for consolidation on the same day. Case No. 19-13319-BFK, Docket No. 25.

37. Mr. Handberg filed an Objection in both cases. Case no. 19-13278-BFK, Docket No. 23; Case No. 19-13319-BFK, Docket No. 29.

38. Campbell Flannery filed a Response in support of the Motion in the TMC case. 19-13278-BFK, Docket No. 27.

39. The Chapter 7 Trustee in the TMC case, Ms. Meiberger, appeared at the hearing on December 17, 2019, and stated her support for the Motions to consolidate.

40. The Chapter 7 Trustee in the NVAC case did not appear at the hearing, though Ms. Meiberger advised the Court that she has discussed the matter informally with Mr. King and in the event of a consolidation, Ms. Meiberger would serve as the Trustee of the consolidated bankruptcy estates.

*F. The Motions for Relief from the Automatic Stay.*

41. Finally, Mr. Handberg filed Motions for Relief from the Automatic Stay in both cases, seeking to return to the State Court to complete the Fraudulent Transfer/Alter Ego Action. Case No. 19-13278-BFK, Docket No. 24; Case No. 19-13319-BFK, Docket No. 30.

42. The Debtors filed objections to the Motions in both cases. Case No. 19-13278-BFK, Docket No. 31; Case No. 13317-BFK, Docket No. 36.

43. Campbell Flannery filed an Opposition in both cases. Case No. 19-13278-BFK, Docket No. 33; Case No. 19-13319-BFK, Docket No. 40.

44. Dr. Goldberg filed an Objection in the NVAC case. Case No. 19-13319-BFK, Docket No. 39.

45. The Court heard the arguments of the parties on January 15, 2020, and took the Relief from Stay Motions under advisement.

## Conclusions of Law

This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. These are core proceedings under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (G) (motions to terminate, annul or modify the automatic stay).

**I.    The Motions for Substantive Consolidation.**

*A. The Chapter 7 Debtors' Standing.*

Ordinarily, the Debtors would not have standing in a Chapter 7 case to pursue a motion for substantive consolidation, because the Debtors have no pecuniary interest in the outcome, although there is an argument to be made that, because a corporation cannot receive a discharge in Chapter 7, it does have a pecuniary interest in whether its assets are consolidated with that of another debtor. *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985) (insolvent Chapter 7 debtor lacks standing to oppose sale of assets); *see also McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996) (debtor has standing to object to administrative expenses where he or she has been denied a discharge).

It is clear, however, that the Chapter 7 Trustee has standing to pursue a substantive consolidation motion. *In re NM Holdings, LLC*, 407 B.R. 232, 281 (Bankr. E.D. Mich. 2009). Similarly, Campbell Flannery, as the largest unsecured creditor in both bankruptcy estates, has standing. *In re Gordon Properties, LLC*, 478 B.R. 750, 756 (E.D. Va. 2012) (citing "numerous well-reasoned cases finding that creditors have standing to pursue substantive consolidation").

The Court finds, given the TMC Chapter 7 Trustee's and Campbell Flannery's support for the Motions, the standing requirement has been satisfied.

B. *Substantive Consolidation.*

The doctrine of substantive consolidation "treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased)." *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) (quoting *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 423 (3d Cir. 2005)). The Fourth Circuit has not addressed substantive consolidation in a reported opinion since the case of *Stone v. Eacho (In re Tip Top Tailors, Inc.)*, 127 F.2d 284 (4th Cir. 1942). In *Stone*, the Fourth Circuit reversed a decision in which the District Court subordinated a claim of a parent corporation (a Delaware corporation) to the claims of creditors in the bankruptcy case of its subsidiary (a Virginia corporation) and in which the District Court denied a motion to consolidate the two cases. The Fourth Circuit held:

> It is well settled that courts will not be blinded by corporate forms nor permit them to be used to defeat public convenience, justify wrong or perpetrate fraud, but will look through the forms and behind the corporate entities involved to deal with the situation as justice may require.

*Id*. at 288.

Further, the Fourth Circuit held that "where the court decides that the corporate entity of the subsidiary should be completely ignored and its assets and liabilities treated as those of the parent corporation, it is both logical and convenient that this be done in one proceeding." *Id*. at 289.

The District Court for this District relied on the *Stone* opinion in *Gordon Properties*. *In re Gordon Properties, LLC*, 478 B.R. at 757-59. There, Judge Brinkema reversed a decision of this Court that denied a substantive consolidation motion. She noted: "Although *Stone* did not set

9

forth a specific test for substantive consolidation, its general approach of focusing on equity to creditors and refusing to 'be blinded by corporate forms,' has been widely noted and followed." *Id*. at 757 (citations omitted).

Two other Circuit Court cases bear mentioning here. In *Union Sav. Bank v. Augie/Restivo Banking Co., Ltd. (In re Augie/Restivo Banking Co., Ltd.)*, 860 F.2d 515, 518 (2d Cir. 1988), the Second Circuit noted that "[t]he sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors." In analyzing a motion for substantive consolidation, the Second Circuit held that the courts should look to two "critical factors:" (1) "whether creditors dealt with the entities as a single economic unit" and "did not rely on their separate identity in extending credit;" or (2) "whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *Id*.. The Court notes that the Second Circuit used the disjunctive "or" here.

In *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.)*, 810 F.2d 270, 276 (D.C. Cir. 1987), the D.C. Circuit held that consolidation may be ordered "to avoid the expense or difficulty of sorting out the debtor's records to determine the separate assets and liabilities of each affiliated entity," but only after "a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties." *Id*.

Both the Third Circuit's opinion in *Owens Corning* and the first part of the Second Circuit's (disjunctive) test in *Augie/Restivo* focus on whether the creditors relied on the separateness of the two entities in making their credit decisions. *Owens Corning*, 419 F.3d at 211 ("what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii)

postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors"); *Augie/Restivo*, 860 F.2d at 518 (whether "creditors dealt with the entities as a single economic unit" and "did not rely on their separate identity *in extending credit*") (emphasis added). Mr. Handberg argues that he dealt solely with TMC and that, therefore, he had no expectation that its assets could be combined with those of NVAC. This, however, ignores the fundamental nature of Mr. Handberg's claim, which arose from the tort of conversion, and not from a voluntary extension of credit. Mr. Handberg never made any credit decisions concerning TMC; he didn't loan TMC any money. He was the victim of TMC's conversion of his $35.00. Accordingly, while there is much to recommend *Owens Corning*'s and *Augie/Restivo*'s reliance approach in the commercial context, this is not a case involving corporate lending where credit decisions were made in advance in reliance on the separateness of the entities.

In considering the desires of the creditors, the Court takes into account the fact that Campbell Flannery has an undisputed, unsecured claim in both cases for $80,000.00. Mr. Handberg's claim is undisputed in the TMC case but is disputed and contingent on the outcome of his Fraudulent Transfer/Alter Ego Action in the NVAC case. His claim for $35.00 in the TMC case is on par with the Campbell Flannery claim; his punitive damages claim for $45,000.00, however, will be subordinated to all of the other allowed, unsecured claims. 11 U.S.C. § 726(a)(4) (2018). The Court concludes, therefore, that the Motions are supported by the overwhelming majority of the debt in both cases.

Most importantly, the Court can discern absolutely no prejudice to Mr. Handberg in consolidating the two estates. In fact, Mr. Handberg will achieve his stated goal in the Fraudulent Transfer/Alter Ego Action by a substantive consolidation. His Amended Complaint in that action avers that "NVACS is a mere continuation of TMC and was created solely to avoid the lawful

judgment of Plaintiff." Case No. CL-2018-14335, Amended Complaint, ¶ 42. Count III of the Amended Complaint seeks a declaration that NVAC is a mere continuation of TMC. A substantive consolidation provides Mr. Handberg with precisely what he seeks in that action.

Mr. Handberg's claim of "prejudice" just doesn't ring true. His real concern is that he wants to paint Dr. Goldberg as a bad actor in the upcoming re-trial of the Defamation Action. He is free to argue whatever he wants in his defense in that action, subject only to the control of the State court trial judge. The substantive consolidation of the two cases in this Court does nothing to prejudice Mr. Handberg's defense of the Defamation Action in State Court.

The Court finds that under the Fourth Circuit's decision in *Stone*, a substantive consolidation is in order here. First, the TMC Trustee owns the fraudulent transfer and alter ego claims against NVAC, and she has the sole standing to bring those claims at this stage of the case. *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc. (In re Ruppert Landscaping, Inc.)*, 187 F.3d 439, 441 (4th Cir. 1999) ("The Sureties' causes of action are thus so similar in object and purpose to claims that the trustee could bring in bankruptcy court that the Sureties lack standing to pursue these claims in district court. Until the trustee has abandoned his potential fraudulent conveyance action, the Sureties cannot proceed with their claims in district court.")

Second, the Motions are supported by the Trustee in the TMC case, and by the largest unsecured creditor in both cases. The Trustee in the NVAC case appears indifferent to the outcome. Third, as noted above, substantive consolidation provides Mr. Handberg, the only objecting party, with exactly what he seeks in the Fraudulent Transfer/Alter Ego Action, with absolutely no corresponding prejudice.

Fourth and finally, a substantive consolidation will avoid the expense and litigation risks (that is, the uncertainty of a result) of the TMC Trustee bringing a fraudulent transfer/alter ego

action against the NVAC bankruptcy estate. In the Court's view, the equities of these cases require a substantive consolidation.

The Court, therefore, will grant the two Motions for Substantive Consolidation.

## II.     The Motions for Relief from the Automatic Stay.

Relief from the automatic stay may be granted under Section 362(d)(1) of the Code "for cause, including the lack of adequate protection of an interest in property[.]" 11 U.S.C. § 362(d)(1). The term "cause" is not defined other than the lack of adequate protection, but the term "including" is not limiting. 11 U.S.C. § 102(3).

The Fourth Circuit set out the framework for determining whether the stay should be lifted or modified to permit litigation to proceed in a non-bankruptcy forum in *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342 (4th Cir. 1992). In *Robbins*, the Fourth Circuit identified the following factors for the Court's consideration: (a) whether the claims involve only State law; (b) judicial economy and the efficient administration of the bankruptcy estate; and (c) protection of the bankruptcy estate. *Id*. at 345.

Although the fraudulent transfer and alter ego claims arise under State law, as noted above, they are property of the bankruptcy estate. 11 U.S.C. § 541(a) (property of the estate includes all legal and equitable interests in property). Until the Trustee abandons or administers the claims, she has "first crack" at the claims, over individual creditors. *Ruppert Landscaping*. 187 F.3d at 441. There is no way to protect the bankruptcy estate's interest in administering these claims while simultaneously allowing an individual to pursue them in State court.

The Court, therefore, will deny the Motions for Relief from the Automatic Stay.

**Conclusion**

It is therefore **ORDERED**:

1. The Motions for Substantive Consolidation are granted. The cases shall be administered under the lead case of *In re The Morgan Center, Inc*., Case No. 19-13278-BFK.

2. The Motions for Relief from the Automatic Stay are denied.

3. The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Jan 21 2020

Alexandria, Virginia

/s/ Brian F. Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: January 22, 2020

Copies to:

The Morgan Center, Inc.
100 West Main St.
Berryville, VA 22611
*Chapter 7 Debtor*

Northern Virginia Advocacy Counseling, Inc.
6 Pidgeon Hill Dr.
Suite 300
Sterling, VA 20165
*Chapter 7 Debtor*

Felicia Goldberg
100 W. Main St.
Berryville, VA
*Designee for Chapter 7 Debtors*

Ann E. Schmitt
Culbert & Schmitt, PLLC
40834 Graydon Manor Lane
Leesburg, VA 20175
*Counsel for Chapter 7 Debtors*

Janet M. Meiburger
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101-5726
*Chapter 7 Trustee*

Donald F. King
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
*Chapter 7 Trustee*

James P. Campbell, Esq. (VSB #25097)
CAMPBELL FLANNERY, P.C.
1602 Village Market Blvd. #220
Leesburg, VA 20175
*Counsel for Creditor Campbell Flannery, P.C.*

Kevin M. O'Donnell
Henry & O'Donnell, P.C.
300 N. Washington Street
Suite 204
Alexandria, Virginia 22314
*Counsel for Creditor Michael Handberg*

14